Plaintiff brings this suit to recover the sum of $1,750.00 representing damages to *Page 479 
a taxicab, of which he was the owner, alleged to have been caused by the negligence of the driver of a truck in an intersectional collision. The defendants are set forth as being Ludvic Herlevic, the driver of the truck, Mrs. Johnnie Montcalm, individually and doing business as Monroe Vending Company, and Massachusetts Bonding and Insurance Company, liability insurer for Mrs. Montcalm. After trial there was judgment in favor of plaintiff and against the defendants in solido in the sum of $1,000.00, from which judgment all defendants have appealed.
Companion suits, which were consolidated with this cause for trial below, were instituted by Ludvic Herlevic against Weatherly, owner of the taxicab, and his insurance carrier, and by Mrs. Meytris Herlevic against the same defendants, which suits bear Nos. 7418 and 7419 on the docket of this Court respectively, 43 So.2d 481; 43 So.2d 481.
The accident which gave rise to this litigation occurred at the intersection of Washington and North Fifth Streets in the City of Monroe, Louisiana, shortly after 11:30 P.M. on October 28, 1943. Newton Brown, the taxi driver in the employ of plaintiff, Weatherly, was driving his taxicab, a 1942 model Chevrolet sedan, in an easterly direction on Washington Street. A pick-up truck owned by Mrs. Montcalm and driven by the defendant, Herlevic, was proceeding in a southerly direction on North Fifth Street. Although a traffic signal is located at the intersection, it is established that the same was not in operation at the time of the accident. However, the record does conclusively establish the fact that Washington Street was accorded preference and right-of-way across the intersection of North Fifth by virtue of ordinances of the City of Monroe. Herlevic and his wife, who was riding on the seat of the truck beside her husband as he was engaged in making a repair call in the course of his employer's business, testified that the truck was brought to a stop some fifteen feet before reaching the intersection; that no traffic was observed on Washington Street in either direction, whereupon Herlevic drove slowly in low gear about two-thirds of the way across the intersection, at which point the truck was struck by the taxicab. This testimony is squarely refuted not only by the testimony of Brown, the driver of the taxi, who was the only other eye witness to the actual collision, but more strongly by the physical facts and circumstances surrounding the accident, which were carefully observed by a number of other witnesses, all of whom were in agreement with respect thereto. The testimony of these witnesses and the mute but eloquent testimony afforded by photographs of the vehicles involved showing the point of impact, is convincing on the point that, contrary to the testimony of the Herlevics, the truck rammed the left side of the taxicab.
At the time of the accident two police officers were driving a police patrol car, in the same direction in which the taxicab was proceeding, some block and a half or two blocks to the rear of the taxi. Neither of the officers actually saw the collision, but with respect to the speed of the taxi, which is one of the material and controverted issues, their testimony is to the effect that it was being driven at a moderate rate of speed. Counsel for defendants in this case makes much of the point that the officers admitted that they were neither noticing nor paying any attention to the taxicab until attracted by the sound of the impact between the vehicles. However, the officers explained their testimony in a manner which seems logical to us by stating that if the cab had been speeding their attention would have been drawn to the vehicle by this fact. Be this as it may, both officers noted, upon reaching the scene of the accident almost immediately after the collision, that skidmarks made by the tires of the truck led from a point at about the intersection of North Fifth with Washington Street up to the point of impact. This physical fact, which is established beyond any question, entirely destroys the testimony of the Herlevics that the truck was proceeding at slow speed in low gear until it was hit by the taxi.
Plaintiff in this case makes a number of allegations of negligence on the part of Herlevic, the driver of the truck, among which several are conclusively established by the record, notably that Herlevic did *Page 480 
not stop before entering Washington Street, did not keep a proper lookout, did not have his vehicle under control, and did not yield the right-of-way, irrespective of the ordinances, to the taxi which had preempted the intersection.
Conversely defendants make numerous charges of negligence against the driver of the taxi, namely, failure to keep a proper lookout; traveling at an excessive rate of speed, alleged to be between 40 and 50 miles per hour; failure to recognize the right-of-way of the truck, which had preempted the intersection; failure to have proper control of his automobile; failure to observe the truck and to make any effort to avoid the collision: driving the cab in the center of the street without lights, or, in the alternative, with dim and ineffective lighting.
We feel that no good purpose would be served by discussing the various charges of negligence preferred by defendants, and it suffices to observe that none of the charges were substantiated by a preponderance of the evidence. On the contrary we find, as did the District Judge, that the taxicab was moving at a moderate rate of speed of some 20 to 25 miles per hour. The cab was equipped with a governor which limited its highest attainable speed to 32 miles per hour, which, according to the uncontradicted testimony of the driver, could not be reached within a distance of less than three blocks, and it is established that he had left the taxi stand, to make the call upon which he was proceeding to pick up a passenger, only two blocks away, on the corner of Third and Washington Streets. We further find, as stated above, that the taxicab, not the truck, had preempted the intersection, and with respect to the question of maintaining a lookout, the testimony of the taxi driver is that he observed the truck as he entered the intersection while the Herlevics testified that they did not see the taxi until the instant before the impact occurred. The testimony of several witnesses sustains the finding that the lights on the cab were burning properly both before and after the accident.
These conclusions leave only one point for discussion. It is strenuously contended on behalf of defendants that the taxi driver failed to make any effort to avoid the collision which could have been prevented if he had brought his car to a stop or if he had swerved to the right. In connection with this matter they urged that Herlevic did make an effort to avoid the collision by pulling to the left. Opposed to this contention and the testimony of the Herlevics we find the taxi driver's testimony that he did pull as far toward the right curb as possible and that he continued the forward course of his vehicle believing that this presented the better chance of avoiding the accident. It is well established that an error of judgment can not be made the basis of negligence. But, in any event, under the facts of this case it is clear that the negligence of Herlevic, the driver of the truck, was the sole and proximate cause of the accident, and, further, that defendants have failed to establish any contributory negligence on the part of the driver of the taxicab.
All of these facts and the conclusions flowing therefrom were clearly and adequately discussed by the District Judge in his written reasons for judgment and with these findings we are in full and complete accord to such degree and extent that we are able to observe that we have seldom considered a tort case of this nature so clearly convincing as to the actual facts involved.
Finally, defendants complain of the amount of recovery allowed plaintiff in the nature of damages to the taxicab. Defendant's objections are based upon the argument that the Chevrolet car was purchased by plaintiff in April, 1942, for the sum of $1,250.00; that it was constantly used as a taxicab until the time of the collision on October 23, 1943, during the course of which operation it had been driven some 50,000 miles, and that plaintiff made no proper effort to minimize the damages to the automobile.
In our opinion these arguments, advanced on behalf of defendants, appear to be predicated more upon the failure of plaintiff to add cumulative proof on the point than upon any affirmative showing on their own part. It is established to our complete satisfaction *Page 481 
that the taxicab was so damaged as to make its repair impracticable, and, according to plaintiff's testimony, the remains of the vehicle were permitted to rest on a nearby lot for about a year after the accident until he sold it for junk for the sum of $90.00. Plaintiff testified that the car was wrecked beyond repair, which testimony is not controverted by the defendants. As a matter of common knowledge and independent recollection it is well known that automobiles during and after October, 1943, for many years, were scarce and that any sort of vehicle which was able to move under its own power commanded practically any price. It is only reasonable to conclude that no automobile owner during this period, least of all the operator of a taxi service, would have parted with the ownership of a damaged machine which was susceptible of being repaired and put into operation. The District Judge apparently reached the conclusion that the sum of $1,750.00 claimed by plaintiff was unreasonable, but there is nothing in the record which indicates to us any manifest error in his judgment by which he arrived at the figure of $1,000.00.
This case involves solely and exclusively the resolution of questions of fact which, in our opinion, were correctly determined by the learned Judge of the District Court. Accordingly, for the reasons assigned, the judgment appealed from is affirmed at appellant's cost.